UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD BARRON, JR.,

        Plaintiff,                     Case No. 11-cv-14202

                                                       Paul D. Borman
v.                                                   United States District Judge

BLUE CROSS BLUE SHIELD OF MICHIGAN,

        Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT BLUE CROSS BLUE SHIELD OF MICHIGAN'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 7)

This matter is before the Court on Defendant Blue Cross Blue Shield of Michigan's Motion for Summary Judgment. (ECF No. 7.) Plaintiff filed a response (ECF No. 17) and Defendant filed a reply (ECF No. 18). The Court held a hearing on September 5, 2012. For the reasons that follow, the Court GRANTS Defendant's Motion for Summary Judgment and DISMISSES Plaintiff's Complaint.

**INTRODUCTION**

This action involves Plaintiff's claim that Defendant Blue Cross Blue Shield of Michigan ("BCBSM") owes Plaintiff an amount of money equal to the amount that Plaintiff's private no-fault automobile insurer, Farmers Insurance Exchange ("Farmers"), has already paid to Plaintiff's providers for Plaintiff's medical expenses. BCBSM responds that Plaintiff was insured under the DaimlerChrysler Corporation-UAW Pension Plan (the "Plan"), which is an Employee Benefit Plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), and seeks to recover

benefits alleged to have been improperly denied under the Plan. BCBSM argues that Plaintiff has sued the wrong Defendant because BCBSM was merely the third-party administrator under the Plan, which was fully self-funded. BCBSM argues that even assuming BCBSM was a proper Defendant, Plaintiff is not entitled to the "double dip" payments he seeks in this action.

## I.      BACKGROUND

Plaintiff was involved in an automobile accident on January 6, 2006. (ECF No. 1, Notice of Removal, Ex. 1, Compl. ¶3.) On the date of the accident, Plaintiff had health insurance coverage through his employer, Chrysler Corporation ("Chrysler"). On that date, Plaintiff also had coverage under an individual, uncoordinated no-fault insurance policy issued by Farmers Insurance Exchange ("Farmers"). (Compl. ¶¶ 5, 6.)

Plaintiff's employer-covered health insurance in effect on the date of the accident, and from 1/1/2005 through 7/31/2007, was through a self-funded employee welfare benefit plan, i.e. the Chrysler Hourly Active Plan (the "Hourly Active Plan"). The relevant documents governing the Hourly Active Plan are (1) the Chrysler Hourly Active Summary Plan Description (the "Active SPD"); (2) the Chrysler Collective Bargaining Agreement Manual (the "CBA Manual"); and (3) the Chrysler UAW Health Care Administrative Manual (the "Administrative Manual"). BCBSM is the third party administrator for the Hourly Active Plan. (ECF No. 7, Def.'s Mot. to Dismiss, Ex. 2, January 12, 2012 Affidavit of David Prince ¶ 3.) The Active SPD provides that "no action shall be taken to contradict the terms of the most current collective bargaining agreement." (ECF No. 7, Def.'s Mot. to Dismiss, Ex. 3.) The CBA Manual states that the Administrative Manual shall be created by BCBSM and that the Administrative Manual will describe the coordination of benefits and third party reimbursement provisions. (*Id.* Ex. 4.)

2

The Administrative Manual contains a general provision disallowing duplication of benefits available to an enrollee from other sources. (*Id*. Ex. 5.) The Administrative Manual also contained an exception to the application of its coordination of benefits provisions which provided that "the program shall not coordinate with individual, group, or family policies of insurance purchased by an enrollee for which the enrollee pays more than one-half the cost." (*Id.*) The CBA Manual, however, which is clearly cited as the controlling document in the Active SPD, was amended on September 29, 2003 to provide for coordination with individually purchased no-fault insurance: "Benefits payable under the Program will be coordinated with and secondary to benefits provided or required to be provided by any group or individual automobile, homeowner's or premises insurance, including medical payments, personal injury protection, or no-fault coverage." (ECF No. 17, Pl.'s Resp. Ex. G, p. 302.)

After Plaintiff's retirement, on August 1, 2007, and through December 31, 2009, Plaintiff was covered under the Chrysler Hourly Retiree Plan (the "Hourly Retiree Plan"). The relevant documents governing the Hourly Retiree Plan are the Chrysler Hourly Retiree Summary Plan Description (the "Retiree SPD") along with the same CBA Manual and Administrative Manual applicable to the Hourly Active Plan. BCBSM is the third party administrator for the Hourly Retiree Plan. *Id*. ¶ 4. The Retiree SPD also states that "no action shall be taken to contradict the terms of the most current collective bargaining agreement." (ECF No. 7, Def.'s Mot. to Dismiss, Ex. 6.)

Beginning on January 1, 2010, and through the present, Plaintiff's coverage in under the UAW Retiree Medical Benefits Trust for Chrysler (the "URMBT"). The URMBT contains a coordination of benefits provision that directly tracks the language of the September 29, 2003 amendments to the CBA Administrative Manual, quoted above. (ECF No. 18, Def.' Reply, Ex. 3.)

3

BCBSM acts as the third party administrator for the URMBT. *Id.* ¶ 6. Also, on July 1, 2008, Plaintiff became eligible for Medicare Parts A and B. *Id*. ¶ 5.

Farmers has paid Plaintiff's medical expenses in full, but Plaintiff seeks to recover for himself personally from BCBSM the same amounts that Farmers has already paid to Plaintiff's medical providers. Plaintiff claims that Defendant BCBSM was primarily responsible to pay Plaintiff's medical providers and that Plaintiff then would have received that same amount personally from Farmers. (Compl. ¶¶ 7-10.) Plaintiff seeks a judgment against BCBSM "in the amount that Farmers Insurance Exchange would have been obligated to pay Plaintiff for the automobile accident-related medical expenses it instead paid to the medical care providers." *Id*. at p. 3.

BCBSM responds that it is the third party administrator of Plaintiff's three relevant self-funded welfare benefits plans and is not financially responsible for payment of Plaintiff's benefits. Although Plaintiff does not assert a claim for benefits under the Employee Retirement Income Security Act, 29 U.S.C. § 1144 ("ERISA"), BCBSM asserts ERISA as a defense and thus properly removed the case to this Court. *Husvar v. Rapoport*, 430 F.3d 777 (6th Cir. 2005). For the reasons that follow, the Court concludes that BCBSM's decision to deny Plaintiff's claim for benefits was not arbitrary and capricious given the September 29, 2003 amendments to the CBA, which clearly provide for coordination of the benefits available to Plaintiff under his Chrysler self-funded plans, with his personally purchased no-fault insurance benefits from Farmers.

## II. STANDARD OF REVIEW

BCBSM moves for summary judgment which requires this Court to find, viewing the facts in the light most favorable to Plaintiff, that "there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court has ruled that the standard of review of a denial of benefits in ERISA cases is *de novo* unless the Plan documents give the plan administrator discretion to construe plan terms or determine entitlement to benefits. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In the instant case, the relevant Plan documents clearly express the intent that the Plan administrator be given discretionary authority to interpret the plan provisions and to determine eligibility for benefits. *See Valeck v. Watson Wyattt & Co.*, 266 F. Supp. 2d 610, 620 (E.D. Mich. 2003) (finding language similar to that in the instant Plan documents clearly established a grant of "complete discretion to determine eligibility for benefits under the Plan"). Thus, as discussed below, the arbitrary and capricious standard does apply to the review of BCBSM's denial of benefits. Accordingly, this Court must rule in favor of BCBSM if it concludes that there is no genuine issue of material fact that BCBSM's decision to deny payment to Plaintiff was "rational in light of the plan's provisions." *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotation marks and citations omitted).

### A. BCBSM's Fiduciary Status Under ERISA as Plan Administrator

As an initial matter, BCBSM asserts that it is not the party "financially liable" to Plaintiff under the Chrysler self-funded ERISA plan that covered Plaintiff at the time of his accident. (ECF No. 7, Def.'s Mot. to Dismiss, 12.) The relationship between an employer and a third-party administrator in a self-funded ERISA plan was described in *Loren v. Blue Cross Blue Shield of Michigan*, 505 F.3d 598 (6th Cir. 2007):

> BCBSM is a health care corporation, organized under the State of Michigan, that administers and processes claims for various ERISA welfare benefit plans, including self-insured (or "self-funded") health benefit plans sponsored and maintained by Ford Motor Company ("Ford") and American Axle & Manufacturing ("Axle"). In

5

> a self-insured plan, the employer elects to pay the health care costs of its covered employees using its own funds, rather than paying premiums to an insurer in exchange for the insurer's assumption of the risk to pay the cost of employer-promised health care. Basically, Ford and Axle act as their own insurance companies with respect to their self-funded benefit plans, accepting the financial risk of coverage and obligation to pay claims using its own funds. Insurance companies such as BCBSM often act as third-party administrators to carry out the daily operations of employers' self-funded plans, since insurance companies already have operations in place to process claims, collect employee premiums, and manage enrollment. In practice, health care providers bill the administrator for the health care services, and the administrator then collects the full payment from the employer, along with a processing fee. BCBSM negotiates rates for hospital services throughout the state, and these rates are reflected in the reimbursement rates and services fees that BCBSM collects from self-insured clients such as Ford and Axle after BCBSM administers their claims.

505 F.3d at 601-02.

In *Deluca v. Blue Cross Blue Shield of Michigan*, No. 06-12552, 2007 WL 3203131 (E.D. Mich. Oct. 31, 2007), the court further explained the relationship:

> BCBSM, directly and through BCN, provides health care products and services to various types of customers, including individuals, employers that sponsor ERISA regulated group health benefit plans for their employees, governmental entities that sponsor group health benefit plans for their employees, and employers providing self-insured health benefits to their employees. BCBSM offers three fundamental forms of health care coverage: a traditional open-access arrangement (allowing the enrollee to obtain health coverage from any medical provider), a preferred provider arrangement ("PPO"), and an HMO through BCN.
>
> These various forms of health care coverage are available on a self-insured or insured (i.e.underwritten) basis. For an insured product, BCBSM bears the risk of loss in return for a premium payment. With a self-insured product, the plan sponsor or plan trust bears the risk of loss and BCBSM merely provides administrative services. The terms and conditions pursuant to which BCBSM provides administrative services to a self-insured group are governed by an "Administrative Services Contract" between BCBSM and the group and amendments thereto. BCBSM has entered into such a contract with the Flagstar Bank.

2007 WL 3203131, at *1-2.  The Administrative Services Agreement between BCBSM and

Plaintiff's employer delegates to BCBSM as fiduciary under the Plans "the power and discretion to

6

construe the terms of the Program and to determine all questions arising in connection with the administration, interpretation, and application of the Program."[1]

When a third party administrator, such as BCBSM, exercises discretionary authority under the Plan, the third party administrator acts as an ERISA fiduciary. Thus, while BCBSM does not bear the risk of loss under Chrysler's self-funded plans, BCBSM has obligations to Plaintiff as an ERISA fiduciary, given BCBSM's admitted, indeed self-proclaimed, discretionary authority to administer the Plan. BCBSM continues to assert that Plaintiff has "sued the wrong party" because BCBSM is not financially responsible for payment of claims under Plaintiff's self-funded Plan. ) However, BCBSM appears to concede its role as an ERISA plan fiduciary, given its undisputed discretionary authority over the determination of a Plan member's eligibility and entitlement to Plan benefits and its "full power and authority" under the CBA to interpret the provisions of the health care benefits program . (ECF No. 7, Def.'s Mot. to Dismiss, 8; Ex. 4, Chrysler Collective Bargaining Manual, Article I(7)(B).)

By asserting ERISA as a defense, BCBSM necessarily concedes its fiduciary obligations under ERISA regarding payment of Plaintiff's benefits as the third party administrator of Chrysler's self-funded Plans. BCBSM appears to acknowledge this: "In the present case, the arbitrary and capricious standard [of review of a denial of ERISA benefits] applies to Blue Cross's decisions to deny Plaintiff's claims for benefits." (Def.'s Mot. to Dismiss 11.)

**B.    The Plan Documents Grant BCBSM Discretionary Authority to Interpret the**

---

[1] The relevant portions of the Administrative Service Agreement between BCBSM and The Chrysler Corporation are attached to this Opinion and Order as Exhibit A. The Administrative Services Agreement was not filed with the Court and the relevant portions of that Agreement were provided to the Court and to opposing counsel at the Court's request, following the hearing on the Motion for Summary Judgment.

**Plan Provisions and to Determine Entitlement to Benefits**

Under the holding in *Firestone, supra*, this Court's review of BCBSM's denial of Plaintiff's claim for benefits is under an arbitrary and capricious standard if the Plan documents grant BCBSM sufficient discretionary authority. *Firestone*, 489 U.S. at 115. Plaintiff states that BCBSM has provided insufficient evidence that the Plan documents give BCBSM the discretionary authority that entitles it to arbitrary and capricious review, but cites no language from the Plan documents and no law that would suggest otherwise. (ECF No. 17, Pl.'s Resp. 2.) BCBSM has relied on portions of all three Plans, as well as the CBA Administrative Manual, that state that BCBSM has the discretionary authority both to interpret Plan provisions and to make determinations regarding eligibility for benefits. Indeed, the governing Plan documents specifically state that the arbitrary and capricious standard will apply to BCBSM's decision under the Plan. The Sixth Circuit has consistently held that such language is sufficient to grant the discretionary authority contemplated by *Firestone*, *supra*. *See Bowers v. Sears, Roebuck & Co*., 91 F.3d 143 (6th Cir. 1996) (table case) ("Since the Sears' plans gave the plan administrator discretionary authority to interpret the terms of the plans, we review the plan administrator's determinations under an arbitrary and capricious standard of review."); *Hampton v. Dana Corp*., 152 F. App'x 441, 443 (6th Cir. 2005) (finding that plan language giving Dana the power to interpret the plan and decide all matters arising thereunder was sufficient under *Firestone* to merit arbitrary and capricious review of offset determination). Plaintiff has failed to rebut this evidence or to suggest to the Court why it should nonetheless apply a *de novo* standard of review.

### III. ANALYSIS

#### A. BCBSM's Denial of Benefits Was a Rational Interpretation of the Plan Documents, Which Expressly Denote the Collective Bargaining Agreement as the Controlling Document In The Event of Inconsistencies With the Plan Documents

"There is no requirement in the [ERISA] regulations that the terms of an ERISA plan be contained in a single document. Nor does the requirement of 29 U.S.C. § 1102(a)(1), that the terms of an ERISA plan be contained in a written instrument, require that it be a single document." *Rinard v. Eastern Co.*, 978 F.2d 265, 268 n.2 (6th Cir. 1992). The terms of a trust agreement, such as the CBA, may be made a part of an ERISA plan if the plan references to the trust document are unequivocal:

> For the terms of another document to be incorporated by reference into the document executed by the parties, *the reference must be clear and unequivocal*, and must be called to the attention of the other party, he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties.

*Rinard*, 978 F.2d at 269 n.2 (quoting 17A Corpus Juris Secundum, *Contracts*, § 299) (emphasis in original). *See also Fountain v. PBG Hourly Pension Plan, et al.*, No. 06-15692, 2007 WL 3101717, at *3 (E.D. Mich. Oct. 16, 2007) (recognizing that the terms of a CBA may be made "part and parcel" of an employee welfare benefit plan with clear language in the plan documents incorporating the CBA, but finding such language lacking in that case).

In the instant case, Plaintiff does not contest the assertion that the terms of the CBA are "part and parcel" of the employee benefit plans under which he was covered. Indeed, Plaintiff purports to rely on the September 29, 2003 negotiated amendments to the CBA in support of his claim to benefits in this case, stating that there is no contradiction between the terms of the CBA on the one hand and the summary plan description and administrative manual on the other. (ECF No. 17, Pl.'s

9

Resp. 8.) Plaintiff does not dispute that the amended CBA provisions trump any contradictory language in the SPDs or the Administrative Manual, but misguidedly argues that the amended CBA does not contain language permitting coordination with Plaintiff's privately-purchased no-fault insurance. Plaintiff quotes from the September 29, 2003 CBA coordination of benefits provisions but fails to cite the language from those provisions that appears to be unequivocally fatal to his case:

> Benefits payable under the Program will be coordinated with and secondary to benefits provided or required to be provided by an group or individual automobile, homeowner's or premises insurance, including medical payments, personal injury protection, or no-fault coverage.

ECF No. 17, Pl.'s Resp. Ex. G, p. 302. The prefatory statement to these September 29, 2003 amendments clearly sets out the intent of Chrysler and the Union to address provisions of the CBA "which are intended to prevent duplicate benefit payments when an individual is covered under more than one health care plan . . . ." *Id*. This is a clear and unambiguous provision of the CBA, and hence of the Plan, providing for coordination of the Plan benefits with the very type of insurance that Plaintiff purchased through Farmers.

It does appear that this September 29, 2003 amendment to the CBA coordination of benefits provision conflicts with other Plan documents. For example, the CBA Administrative Manual stated in Part 13 that: "The program shall not coordinate with individual, group, or family policies of insurance purchased by an enrollee for which the enrollee pays more than one-half the cost." (ECF No. 7, Ex. 5, Sec. 13.1.) Likewise, the Retiree SPD that was in effect at the time of Plaintiff's accident (indeed up until 2008 when the SPD was amended) provided that: "Coordination of benefits does not apply to non-group coverage that is privately purchased." (ECF No. 17, Ex. D, p. 66.)

There is also, however, no dispute that both the Active SPD and the Retiree SPD clearly state that they are subordinate in all respects to the terms of the CBA, which as outlined above, was

10

amended on September 29, 2003, specifically to permit coordination with no-fault insurance of the type purchased by Plaintiff. Furthermore, the Retiree SPD was updated in 2008 to directly track the language of the CBA explaining unequivocally that: "Benefits under the Program will be coordinated with and secondary to benefits provided or required by any group or individual automobile, homeowner's or premises insurance, including medical payments, personal injury protection, or no-fault coverage." (ECF No. 13, Def.'s Reply Ex. 2, 2008 Summary Plan Description for the Chrysler Hourly Retiree Plan.) That this amended language covers privately-purchased coverages is clearly implied by the nature of the coverages sought to be coordinated, several of which are "individual" and inherently privately-paid coverages. This same language appears in the URMBT SPD.

BCBSM concedes that its Administrative Manual "has not been updated in a timely fashion" and that its Hourly Retiree SPD was updated during the time that Plaintiff was receiving his healthcare coverage. (ECF No. 13, Def.'s Reply Ex. 1, March 5, 2012 Affidavit of Sharon Moore ¶¶ 4 and 7.) BCBSM also states, and Plaintiff does not dispute, that the Administrative Manual is a document used by BCBSM and Chrysler "to carry out the dictates in the Collective Bargaining Agreement" and "is not a document that is typically provided to participants or beneficiaries" of the various plans. *Id*. ¶ 6. BCBSM maintains, and Plaintiff does not dispute, that any discrepancies between any of these Plan related documents and the CBA must be construed in favor of the CBA. The CBA, as amended on September 29, 2003, is unambiguous in its declaration that individually purchased policies, like Plaintiff's policy with Farmers, will be coordinated and secondary to benefits payable under the Plans. *Id*. ¶ 7. BCBSM administers the Plan in accordance with the CBA and has modified its claims processing system to be in compliance with the terms of the CBA. *Id*.

Accordingly, Plaintiff's Farmer's policy was coordinated and his claim for benefits denied. The Court concludes that this decision was not "arbitrary and capricious" given the provisions of the Plan(s).

Plaintiff's reliance on *Haefele v. Meijer, Inc*., 165 Mich. App. 485 (1987), *remanded for rehearing*, 431 Mich. 853 (1988) (remanded to consider ERISA defense), is misplaced in light of the clear language of the amended CBA, to which Plaintiff has offered no rebuttal. In *Haefele*, the Michigan Court of Appeals construed a coordination of benefits provision in plaintiff's employer-sponsored health plan, which appeared under the heading "What Happens If You Are Covered By More Than One Health Plan," to be directed only at health plans covering groups and therefore not requiring coordination with plaintiff's privately-purchased no-fault policy. *Id*. at 498-99. The Court of Appeals observed that it would be "anomalous to conclude that plaintiff, who presumably paid a premium for uncoordinated automobile no-fault coverage, ultimately purchased nothing more than a reduction in the liability of her group health carrier." *Id*. at 499. In so holding, however, the Court of Appeals expressly noted that the coordination provision mentioned no-fault insurance but "[did] not specifically mention privately purchased automobile insurance." *Id.* at 499. Unlike the policy language at issue in *Haefele*, the September 29, 2003 CBA amendments expressly mention individually purchased automobile insurance.

The amended CBA language creates greater parallels to *Smith v. Physicians Health Plan, Inc.*, 444 Mich. 743 (1994), a case on which BCBSM relies. The plan language in *Smith* provided that benefits would not be provided under the employer sponsored plan "to the extent to which the member is covered under any automobile-related policy." *Id*. at 747. The issue in *Smith* was not whether the language permitted coordination, clearly it did. The issue was whether "a coordinated

12

health insurance policy [the employer-sponsored plan] requires the insurer to pay the insured the value of medical expenses that have been paid under the uncoordinated no-fault policy [the privately-purchased no-fault insurance]." *Id*. at 753. The Michigan Supreme Court held that the employer was not required to do so under the express language of the coordinated policy at issue and that "[e]nforcing the policies as written eliminates duplicate coverage and reduces health insurance and medical costs." *Id*. at 754. In response to plaintiff's argument in *Smith* that he had paid a premium for his uncoordinated no-fault coverage and that he was being deprived of the benefit of that purchase, the court observed:

> Plaintiff contends that without a nullification of the coordination of benefits clause, he will not be allowed to receive the insurance coverage he contracted for. The flaw in that argument is that there was no contracting between the employee, the employer, and the health care provider for uncoordinated coverage. The contract was with the no-fault carrier for uncoordinated coverage, meaning the no-fault carrier agreed to be primary in the event of a claim. The contract between the no-fault carrier and the insured cannot be said to bind PHP and alter the terms of the agreement it made with Meijer, Inc., to provide health insurance to its employees.

*Id*. at 754-55. So it goes in the instant case. The CBA, as amended in September, 2003, clearly mandates coordination under the Active Hourly Plan and the Retiree Hourly Plan, with Plaintiff's individually purchased no-fault automobile insurance. Similarly, there is no dispute that the URMBT contains language identical to the amended CBA. Accordingly, this case is controlled by *Smith*, and not by *Haefele*, and Plaintiff is not entitled, to the double-dip payments he seeks.

> **B.  Although Plaintiff Advances No Estoppel Argument, a Claim of Equitable or Promissory Estoppel Based on the Language of the Summary Plan and/or Administrative Manual Would be Unavailing Where the Plan Clearly Manifested the Intent to Incorporate the Terms of the CBA, Which Was Amended on September 29, 2003, to Unequivocally Prohibit Plaintiff's Efforts to Double Dip**

The Sixth Circuit has recognized that estoppel can be a viable theory in an ERISA benefits

13

action. *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 428 (6th Cir. 2006). However, as with all estoppel claims, reliance is a necessary element and the Sixth Circuit has likewise recognized that a "party's reliance can seldom, if ever, be reasonable or justified if it is inconsistent with the clear and unambiguous terms of the plan documents available to or furnished to the party." *Crosby v Rohm & Haas Co.*, 480 F.3d 423, 431 (6th Cir. 2007). "Principles of estoppel . . . cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." *Sprague v. General Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998). "[T]o allow estoppel to override the clear terms of the plan documents would be to enforce something other than the plan documents themselves." *Id.*

Plaintiff in this case concedes the applicability of the amended CBA and claims that it unambiguously supports his claim for benefits. There is no dispute that each SPD and the Administrative Manual clearly explained that the benefits described in the plan documents were "in every respect" subject to the provisions of the CBA, the terms of which were available to all participants and beneficiaries upon request. (ECF No. 17, Pl.'s Resp. Ex. D, p. 67-68.) The CBA was amended on September 29, 2003, and in clear and unambiguous terms requires coordination of benefits in this case. Plaintiff does not claim that he was never provided access to the terms of the CBA and indeed relies on the CBA himself as supporting his entitlement to double-dip benefits, when in fact the September 29, 2003 amendments on which he relies clearly disallow the relief he seeks. Plaintiff fails to acknowledge the relevant language of that document that makes it crystal clear that his Farmers no-fault automobile benefits will be primary and will be coordinated. Thus, there is no ambiguity, no internal contradiction in the controlling documents, and estoppel is not

therefore a viable theory.[2]

## IV. CONCLUSION

For the reasons above, the Court concludes that there is no genuine issue of material fact that BCBSM's decision to deny Plaintiff benefits was not arbitrary and capricious and GRANTS BCBSM's Motion for Summary Judgment (ECF No. 7) and DISMISSES Plaintiff's Complaint with prejudice.

IT IS SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: September 25, 2012

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on September 25, 2012.

s/Denise Goodine
Case Manager

---

[2] Nor does Plaintiff argue, nor does the Court believe, that this case is controlled by *Edwards v. State Farm Mut. Ins. Co.*, 851 F.2d 134 (6th Cir. 1988), in which the Sixth Circuit held that when a plan participant receives only a copy of an SPD, and not the actual Plan, and the SPD directly contradicts the terms of the actual Plan, the language of the SPD is controlling. Here, unlike in *Edwards*, each SPD that Plaintiff received, as well as the Administrative Manual, expressly stated that the CBA was the controlling document in all respects and that a conflict between any of the Plan provisions and the CBA would be resolved in favor of the CBA. Thus, "Plaintiff should not have relied on the SPD when its language advises that the [CBA] controls final claim determination." *Parr v. Diebold, Inc.*, No. 09-1041, 2010 WL 4739933, at *5 (N.D. Ohio Nov. 16, 2010) (reasoning that *Edwards* is not applicable where there is no evidence that plaintiff did not have access to the controlling plan language); *Walborn v. Aetna Life Ins. Co.*, No. 09-532, 2010 WL 3672332, at *4 (S.D. Ohio Sept. 17, 2010) (holding that *Edwards* is not applicable where plaintiff relies on an outdated version of the controlling plan documents).